## Case No. 16,555.

### UNITED STATES v. TWELVE THOUSAND THREE HUNDRED AND FORTY-SEVEN BAGS OF SUGAR.

[1 Abb. U. S. 407; [1] 1 Am. Law T. Rep. U. S. Cts. 110; 8 Int. Rev. Rec. 129.]

District Court. D. California. Aug. Term, 1868.

COLLECTION OF DUTIES—BOND FOR RETURN OF GOODS SEIZED.

Under section 89 of the duties collection act of 1799 [1 Stat. 695], which allows goods seized for non-payment of duties to be appraised, and delivered to the owner upon his giving a bond for the payment of the appraised value, &c.,— the bond must be for the actual cash value of the property, at the time and place of seizure, without any deduction for duties paid. This rule applies equally, whether the property has ben seized in warehouse or in the hands of the importer.

[Cited in U. S. v. 1,291 Bales of Tobacco, Case No. 15,965.]

Petition for return of goods seized as unlawfully imported.

The custom-house officers having seized a quantity of sugar upon an information that it had been imported without payment of full duties, this petition was now presented by the owner, under section 89 of the duties collection act of 1799, praying that, upon his executing the bond required by the section, and otherwise complying with its provisions, the property might be delivered to him. The only question made, was as to the amount of the bond.

Delos Lake, U. S. Dist. Atty.

Doyle & Barber and C. A. McNulty, for petitioner.

HOFFMAN, District Judge. An application is made by the owner and claimant of the goods proceeded against in this suit, that the appraisers be instructed to appraise the goods at their cash market value less the duties legally chargeable upon them, and that upon giving bond for the value so ascertained, and producing a certificate of the collector that the duties have been paid, the goods be delivered to the claimant.

This application is opposed by the district-attorney, who contends that the goods should be appraised at their full market value, without deducting the amount of the duties. It appears that two separate entries at the custom-house were made of the goods,—a part was entered for consumption, the usual deposit made to cover the duties, and a delivery order obtained by the importer. Before this order was executed the goods were seized. For the remainder of the goods a warehouse entry was made, and the bonds required by the acts of August 30. 1842 [5 Stat. 548], and August 6, 1846 [9 Stat. 53], duly executed. They were still in the warehouse when seized.

1 [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

The question presented to the court is important. It has been very fully discussed by the learned judge of the Southern district of New York, who has delivered a long and elaborate opinion, in which the whole subject is reviewed. [Case No. 4,986.] The conclusions at which he arrives are, that the bond for value under section 89 of the act of 1799 should represent the full value of the property to the importer at the time of seizure. That when the property is seized in his hands, after the duties are paid, its value to him is its market value, which necessarily includes the duties. But that, where property under bonds for duties is seized in a warehouse, its full value to the importer at the time of seizure is its market value, less the duties; and for this amount the bond on delivery must be given.

I have been unable to assent to the correctness of these conclusions. It is observed by the learned judge that "the interpretation uniformly given to section 89 of the act of 1799 is, that the sum at which the property seized is to be appraised is its value as of the time and place of seizure." No authorities are cited in support of this position. With great deference it appears to me to involve a fundamental error. The government on a seizure of forfeited goods acquires a right of property, which it enforces by a condemnation and sale. As until condemnation the fact of forfeiture is unascertained. the claimant is allowed to obtain his goods on submitting in their stead a bond for their value. The sum for which this bond is to be given should obviously be a sum equal to the value of the goods to the government at the time they are delivered to the claimant, or the equivalent of the amount which might then be realized from them by a sale in the market. Nothing less will put the government in the same position as if it had retained the goods, or prevent its being a loser by the pretended substitution of an equivalent in value.

To estimate this value as of any other time than that of the appraisement and delivery might, according to circumstances, be a hardship and an injustice either to the government or to the claimant. The seizure may have been made months previously. If, in the mean time, the price of the goods has declined, or their value otherwise been impaired, it would be unjust to demand of the claimant a bond for a larger sum than he can obtain for them in the market. If, on the other hand, their price has appreciated, he has no right to ask the government to surrender goods which have become its property by the forfeiture without receiving a bond of an amount equal to their full value when it surrenders them. This value is evidently the price which the goods then command in the market. When the claimant applies to the court for a delivery of the goods seized, on payment of the duties and giving a bond for their value, he, in effect, asks that the property be delivered to him, on which, as soon as it reaches his hands, the whole

market value can be realized. This is its true value, both to him and to the government. If he be permitted to give a bond for a less amount, he will obtain his goods at less than their true value, and the government will part with them on a security representing a smaller sum than the goods would be worth if retained in its possession.

It is plain that in case of seizure, as in all other cases where property in the possession of the law is surrendered on substituting a bond for its value, the bond should be for a sum equivalent to the value of the goods at the time of the delivery by the party who surrenders, and to the party who receives. This is evidently a sum no greater and no less than the market value of the goods at the time of the delivery. But even if it were true that the basis of appraisement is the value of the goods to the importer at the time and place of seizure, I do not perceive why that value is to be taken as the market value less the duties. The importer has given bond for the duties, and this bond he is liable for, unless the goods be re-exported. If the goods perish in the warehouse, he still remains liable for the duties, and his loss is the amount of their market value. If he forfeits the goods in consequence of his crime he must still pay the duties, and the loss he sustains is the market value of his goods. This loss the government alleges he has incurred, and if, while the question is undetermined, he seeks to obtain his goods, he must give bond in the sum they were worth to him when his ownership of them was divested by the forfeiture and seizure. Even then, on the hypothesis that the appraisement is to be as of the time and place of seizure, it is clear that the basis of appraisement must be the full market value of the goods at that time without deducting the duties. But for the reasons assigned above, I think it evident that the value must be fixed as of the time the appraisement is made, and the goods delivered to the claimant.

But it is said, in the opinion referred to, that "in case such a bond as the government claims to receive in this present case be given, the importer will lose, if the property is condemned in the suit, not only what was the value to him of the property in warehouse at the time of its seizure, but in addition a sum equal to the amount of the duties chargeable thereon, and if, after thus bonding the property, he withdraw it for consumption, he must pay the duties on it in cash to the collector, notwithstanding the amount has been included in such delivery bond. He will thus, in case of condemnation, lose more than he would if the property was not delivered to him on bond, but was to remain in the hands of the government and be sold by it. In each case the same offense is charged, and has been committed, for which the property is forfeited. In each case the property is in warehouse under bond for duties. The merchant is equally guilty in each case; but if the claimant seeks to avail himself of the privilege of bonding his property when it is seized while in warehouse, he cannot do so according to the views urged by the government, without imposing upon himself a liability in case the property is condemned which he will not incur if he leaves the property in the hands of the government. Such a result is opposed to the spirit and intent of section 89 of the act of March 2, 1799. * * * To require from him such a bond as the government claims, would be to deprive him practically of the benefit of bonding warehoused property seized and prosecuted while in warehouse. But if the property is delivered to the claimant on a bond for its value when seized, not including the duties, then if the property is condemned in the suit the importer will lose the same amount as if he had not bonded the property, and no more, and will thus have the full benefit of the privileges of the warehouse system, and the full benefit of the system of bonding provided for by section 89 of the act of 1799."

I have cited this passage at length, for it contains a full statement of the ground on which the learned judge based his opinion. The fallacy of the fundamental idea on which it rests appears to me evident. The penalty attached by law to the offense charged is the forfeiture of the goods seized, or their value. The payment of duties is not exacted as any part of the penalty. The obligation to pay them attaches absolutely as the consequence of the importation, and this payment is exacted, whether the goods be forfeited or not, as a condition precedent to the delivery of them to the importer. If the goods be entered for warehouse, the importer has the right, within a limited time, to re-export them and procure the cancellation of his bond; but in all cases where the goods are delivered to the importer, as the claimant now asks the court to order, the duties must first be paid. If the goods are condemned the loss to him is precisely the same, whether he bonds them, as the government now claims he must do, or whether he suffers them to remain in the custody of the court and be sold under its decree. In either case he must pay the duties, for his bond for duties can only be canceled by the exportation of the goods, and this, by his own crime, he has put it out of his power to do. Besides the duties, he loses, in either case, the value of his goods, and no more. If he suffers them to be sold, this is evidently the amount of his loss. But if he obtains their delivery to himself on giving bond for their full market value, the bond will represent only what they are worth to him, and the sum he can obtain for them in the market. If the goods are subsequently condemned, he pays over their proceeds in satisfaction of his bond, and his liability is thus precisely what the statute creates—lia-

bility to pay the duties, and as a penalty for his offense, the loss of his goods or their proceeds.

The fallacy of the argument so often urged, that by exacting a bond for the full market value, including duties, and also requiring the duties to be paid, the court obliges the importer to pay duties twice, is also apparent. He pays duties but once, and he gives bond for the amount which the property is worth to him when delivered, and which, if the appraisement be just, he realizes from its sale. If he be permitted to take his goods on giving bond for their market value, less the duties, the inevitable consequence will be that he will save, and the government will lose, a sum equal to the amount of the duties. For though he pays duties in the first instance, he can sell the goods at their market price, and thus be reimbursed the duties he has paid, while the balance of the proceeds will be sufficient to satisfy the bond he has given. The goods will thus have gone into consumption in effect without payment of duties, or, to speak more accurately, the government will, though it has received the duties, recover less, by precisely their amount, than the value of the property, the ownership of which it had acquired by the forfeiture.

The circumstance that the goods have been seized in a warehouse can in no way affect the matter, for the claimant asks, not that the goods be permitted to remain in warehouse, and the seizure be superseded, but that they be delivered to him and go into consumption. This the court can order only on payment of duties. He thus puts himself precisely in the position of one who withdraws goods for consumption, and the value he should give bond for is the value of the goods he receives, which is their market price, or the sum he can obtain for them. Even if the importer, whose goods have been seized in a warehouse, can, on applying to bond them, be considered as retaining any right to avoid payment of duties by re-exporting them, a single illustration of the possible results of the mode of appraisement suggested will expose its erroneousness. Let us suppose the market value of the goods to be equal to or less than the amount of the duties. Such is said to have been until recently the case with regard to whiskey. Their market value, less the duties, will, in such case, be nothing, and the claimant can procure their delivery to him on giving bond in a nominal sum. If, then, he can omit to pay the duty, and re-export the goods, or recover the duty back by way of drawback (as he may possibly do in this case under section 14 of the act of August 30, 1842), he may, by a sale in a foreign market, realize from them a sum which, though less than the

duties, may be considerable, while the government, which has established its title, by forfeiture, to the goods, will have neither duties, goods, nor a bond. In view of the late ruling market prices of whiskey, the case suggested does not seem an extreme one, but the case is illustrated in all cases where the amount of the duties bears any considerable proportion to the market value of the goods.

It is observed by the learned judge of the Southern district of New York, that "uniformity of principle and equal justice to importers, in all cases, can be carried out only by varying the basis of appraisement in the manner indicated in cases of delivery bonds on seizures of property in warehouses." With all deference, I must be allowed to observe that the proposed variation seems to me to introduce a discrimination between importers of different classes not justified by reason or law. It is admitted that if the duties have been paid, and the goods are seized in the hands of the importer, he can only obtain them by giving bond for their full market value, or, in other words, by securing the repayment, in case of condemnation, of the value he receives when the goods are delivered to him. On what ground should the importer, who has made a warehouse entry, be put in a better position? He also asks for and receives property which he can at once convert into money, and for which he can obtain by sales the sum he is required to pay in case of condemnation. The goods are worth that sum to the government; and what right has he to ask the government to surrender them without receiving a bond for their full value? I confess, that after the fullest consideration, I have been able to discover nothing, either in the warehouse laws or the provisions of section 89 of the act of 1799, which can give any color to such a pretension.

I regret exceedingly to be obliged to dissent from any opinion entertained by the distinguished judge of the Southern district of New York, especially when it is sustained by that of his eminent predecessor. But I cannot avoid announcing the conclusions which, after the best consideration I can give the subject, I have reached. My belief in their correctness is strengthened by the fact that they seem to be in accordance with the views entertained by the learned judge of the Pennsylvania district, whose decision, which I have not had the advantage of seeing, is referred to in the opinion of the district judge of the Southern district of New York. [Case No. 16,249.]

An order must be entered directing the goods seized to be delivered to the claimant, on his executing a bond for their appraised value, without deducting the duties, and on the production of the collector's certificate that the duties have been paid.

Order accordingly.